Good morning, Your Honors. My name is Barbara Ferdy. I'm here for the appellant Katrina Perkins-Steinberger. I appreciate your time here today. I would like to reserve five minutes for rebuttal. This has been a 10-year odyssey for my client, Katrina Perkins-Steinberger, simply to have basic contract principles applied to multibillion-dollar financial institutions that she's been fighting. Over the course of this lawsuit, we've uncovered the truth about Deutsche Bank as trustee and how it functions. We've uncovered the truth about real estate mortgage investment conduits and how they work. That truth was not recognized by the district court. And now we're here before this honorable court with these facts and hoping that they get recognized. I wanted to address, first of all, the recent order that came out requesting information or discussion about mootness and remedies. This case is not moot. We are currently in the 6-month redemption period under Arizona statute for my client to redeem. This was a judicial foreclosure. The redemption period expires on July 25. If this Court finds the only reason this case isn't moot is because we're in that redemption period, I would respectfully request that you toll that period while you issue your decision so that eight years of litigation don't go down because of a week's delay. She's still in the home, and she's also now believing that she has to vacate by July 25 as well. But the case is not moot anyway because there is ample Ninth Circuit law that indicates that as long as there is any kind of remedy that the Court can grant, it's not moot. I will be filing a supplemental authority with these case citations. I didn't have an opportunity to do it before today. But that's the U.S. v. Able Time case. As long as there's a controversy, the Northwest Environmental Defense Center case also says. The question is whether you can give any effective relief, not just the relief that was requested in the complaint. Has the home been sold? The home is titled in Deutsche Bank's name. And it's not been sold to a third party? That's correct. Yes. And she's still living there? Yes, she is, Your Honor. So Arizona case law also indicates in this kind of a situation that the matter should not be moot. Vinson v. Martin & Associates, a very similar case. Foreclosure sale occurred, no supersedious bond was posted, and there was no claim for damages made in the complaint. The foreclosure occurred during the litigation. The Court granted relief nevertheless and gave damages in lieu of the property and said if facts proven entitled the plaintiff to relief under any theory, the Court should give relief. And retention of the home by Deutsche Bank at this point would definitely be unjust enrichment because of the facts that are available to the Court here. Also, Federal Rule 54C is very plain, that you can grant Ms. Steinberger a remedy. The rule says that judgment should grant relief to which a party is entitled, even if the party did not request that relief in their pleadings. So that's exactly the situation we have here. Ms. Steinberger could receive monetary damages, and the credit bid on the home was $801,000. I submitted in my reply brief that I thought that that would be appropriate damages for this foreclosure that occurred when it should not have, in addition to attorney's fees and costs. As I said, this has been a long, long journey for my client at the expense of her financial and physical well-being. Why don't you tell us why the foreclosure was wrong? Absolutely. There are five independent grounds for reversal of this judgment. The first one is statute of limitations. I think that's the one that's the easiest one. Everyone acknowledges the statute ran before the judgment for judicial foreclosure was filed. But the district court nevertheless granted Deutsche Bank judicial foreclosure, finding that a couple of documents were revocation of acceleration. Under the law that existed at the time she issued her decision, they absolutely were not. But now there's a published case in Arizona in 2018, which makes it very clear that neither one of these documents revoked acceleration. The two documents which supposedly revoked acceleration was a cancellation of the trustee's sale, which is in the record at ER 855. And that trustee's cancellation says nothing in it about revoking acceleration. The other one that the district court found was a revocation is a letter dated August 23 of 2012, which is ER 845 in the record. Again, this letter has zero language in it about revoking the acceleration which was in place at that time. Under the new Miller case, communication to the debtor by the creditor must contain a statement that the acceleration of the debt has been withdrawn. There is no such statement in these documents. The acceleration was never withdrawn in this case. On top of that, Ms. Steinberger obviously relied on the acceleration because she's been litigating this case for eight years. And I cited case law that says that if the person is relying, you can't revoke either. Now, a couple of other things that the foreclosures, as I call them, the banks on the other side, claim toll the statute of limitations. They claim there was legal tolling and equitable tolling. There was neither one. The legal tolling they claim are a couple of different things. One is a short-term bankruptcy filing. But they never had before the district court the date of dismissal of that filing. So this court cannot even consider that at all. They tried to sneak it into the record before this court. It was not before the district court. I discussed that in my briefing. They have the burden of proving tolling, and they haven't proven it. They also claim that the temporary restraining order that was in place for a time in state court tolled the statute of limitations. Again, the facts do not bear this out. First of all, it was their choice to file a nonjudicial foreclosure. They could have filed for judicial foreclosure way back in 2009, 2010, 2011, sometime. They never did. They wanted to go nonjudicial. So that meant we needed to get a TRO to stop the sale. They could have canceled the sale and filed for judicial foreclosure. Any time during their six-year statute of limitations period, they chose not to. There was a preliminary injunction hearing set to determine whether the TRO should be dissolved. They put it off, and they put it off, and they put it off. Do you know why? Because the judge ordered that Deutsche Bank appear and testify. They did not want Deutsche Bank to testify because they knew that I would discover what I discovered when I finally got them to testify in 2016, which is that they have no standing and they've suffered no damages, and they don't have any involvement with this loan. Ms. Forty, it strikes me that certainly I appreciate those arguments, but it strikes me that the strongest argument that the other side has with respect to the statute of limitations is this claim that your client acknowledged the debt. Can you talk to us about that? Absolutely. She did not acknowledge the debt. Under the case law, in order to acknowledge the debt, the De Anza case, the debtor must express a moral obligation to pay the original debt, and to acknowledge it is to say that you're going to bring it current or pay it in full. She never did that. She obtained a forbearance agreement. The forbearance agreement is in the record. Nowhere in there does it say she acknowledged the debt. In fact, the forbearance agreement and everything else she ever got from the foreclosures said, by the way, you're still in foreclosure. This is only temporary. But doesn't the forbearance agreement presuppose the existence of the debt and your client's signature acknowledging the debt? No, it doesn't, Your Honor, because you need more than that. And a forbearance agreement was. . . The whole purpose of a forbearance agreement is the assumption that there is a debt, but it's being foreborn on terms agreeable to both sides. Why isn't that an acknowledgment of the debt? Because in order for it to be a true acknowledgment under Arizona case law, it has to be an acknowledgment, a moral obligation to pay the original debt. A forbearance, by definition, is I'm not going to pay the original debt. I can't pay the original debt. And if you read the forbearance agreement, it doesn't have that in there. There's another case that even someone who listed a debt on a financial statement, the entire amount, and signed it, the Arizona court found that is not an acknowledgment of a debt that will stop the statute of limitations from running. So the forbearance agreement absolutely doesn't do that either. So I guess the same argument applies to this HAMP application. You were saying that because it's an attempt to modify the debt, it's not a moral acknowledgment of the debt. Exactly. And, in fact, I also wanted to point out there's no HAMP application in the record. So they can't make an argument about what the HAMP application says because they never submitted it. So any argument that the HAMP application somehow acknowledged the debt has to be disregarded. Let me ask you about this, though, that apparently there's a hardship affidavit in the record at 871 that says the following that apparently your client signed. It says you agree that all terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect, and you will comply with those terms. What does that mean? Where is that being read from? That's in the record at 871. But what document is that? I'm sorry. It's a hardship affidavit that comes along with the HAMP application. Okay. Well, once again, the actual terms of the HAMP application are not in the record. Well, something's in the record. I'm reading you an excerpt from the record. You might want to look at that and come back on rebuttal and tell me why that is not an acknowledgment of the debt. I'm sorry. What's the record number? 871. Okay. It looks like I'm down to only three minutes, so I will reserve the rest of my time for rebuttal. Thank you. Thank you. Good afternoon, Your Honors. Saul Kratzer for the appellees. I guess what I'd like to do is, since most of our argument was devoted to the statute of limitations, I'll just skip right to the statute of limitations arguments. In Arizona, the statute of limitations is disfavored. Applying the statute of limitations to this case would wipe out a $750,000 security and give Ms. Steinberger an enormous windfall. And I think it's really important to point out that this is not a situation where the lender did nothing for six years and then tried to enforce its rights. Deutsche Bank, as trustee, has been trying to foreclose since 2009. In fact, the trustee sale was scheduled to take place on May 19, 2009, and the only reason that trustee sale did not occur was because of the bankruptcy It was actually filed in Mr. Perkins' name, filed by Ms. Steinberger, the day before the trustee sale on May 18, 2009. So absent that bankruptcy filing, we probably wouldn't be here today. After the bankruptcy, Ms. Steinberger obtained an injunction that prevented foreclosure until 2014. In her own declaration, Ms. Steinberger said, in order to stop the pending trustee sale, I obtained a temporary restraining order. If you're not allowed to foreclose because a court order or pending action prevents it, that is classic legal tolling. Here we're looking at more than 1,000 days of legal tolling, and we only need 34 days of tolling. But tolling aside, I think it's important to step back and remember that there's two ways to determine the accrual date for installment obligations with an optional acceleration clause. The first that we've discussed at length is the acceleration date. Our contention is that the acceleration date is March 23, 2015, because in Arizona the acceleration date is either the date that the notice of trustee sale is recorded or the date that the judicial foreclosure was filed. The other way is that an action accrues and the statute of limitations runs against each installment from the time it becomes due. So it's important to point out and remember, without acceleration, this loan does not mature until June 1, 2035. So that means without acceleration, the statute of limitations technically would not run until six years after the last installment, or June 1, 2041. But in this case, the district court correctly determined that the lender revoked acceleration in 2012. The recent case, Ondra v. Miller Designs, which was decided after we submitted our answering brief, confirms that acceleration of the debt can be unilaterally revoked at any time. So that means that we could theoretically revoke it even to this day, assuming the judicial foreclosure was dismissed. Steinberger, Ms. Steinberger argues that the loan was never decelerated because the 2012 letter did not contain magic language, so to speak. But Ondra v. Miller does not require magic language. Ondra v. Miller, the holding is that revoking acceleration requires an affirmative act, putting the debtor on notice that communicates to the debtor, excuse me, that the creditor has revoked the debt's acceleration. This is the same affirmative act analysis that the district court relied on, even before Ondra v. Miller Designs, and that was actually based on an unpublished decision at the time. Ondra v. Miller dealt solely with a cancellation of trustee sale. Here, we not only have a cancellation of trustee sale, we have an August 23, 2012 letter that communicated to the debtor that the loan was no longer accelerated in at least two ways. First, the letter warned the borrower that acceleration could occur at some point in the future. The only reasonable interpretation of that language is, one, acceleration, the loan was never accelerated in the first place, or two, the loan had been decelerated, which is what happened here. Second, the August 23, 2012 letter gave the borrower a new right that they did not have when the loan was accelerated. By definition, once a lender exercises the acceleration clause, full payment of the note is required to avoid foreclosure. The August 2012 letter allowed Ms. Steinberger to bring the loan current by paying much less than the full amount owed on the note. She only had to make up the payments missed. So this is a difference of hundreds of thousands of dollars. This is a right that the August 2012 letter gave Ms. Steinberger that she did not have when the loan was accelerated. It's very important to point that out. So in her reply brief, Ms. Steinberger argues that the August 2012 letter has, quote, no legal significance. But that's completely wrong. The August 2012 letter gave Ms. Steinberger more rights than she had before the letter was sent. Consistent with the loan being decelerated, the record's full of other evidence, including, as Ms. Steinberger admits, the foreclosure process was started anew in 2012. And this is you can see this by comparing the January 5, 2009 acceleration letter, default letter, with the August 23, 2012 default letter. Looking at both of these letters, there's really no difference. They both say, warning, the loan may be accelerated in the future, but right now you have 30 days, I think it was 30 days, to just pay back the missed payments and you can reinstate the loan, avoid foreclosure. So that proves that the loan was decelerated. We admit that the August 2012 letter does not say the magic language in bold, this loan has been decelerated. We freely admit that. The letter says what it says. But that's why there's no dispute of facts. There's no dispute that these letters were sent. There's no dispute that the letters were received. There's no dispute that the letters were read. So we do agree with the district court, notwithstanding Andra v. Miller Designs, that the loan was decelerated. But, again, even assuming we use February 17, 2009, as the accrual date, as Ms. Steinberger argues, that means that we only need 34 days of tolling, 34 days. And to say that we slept on our rights when we were trying to foreclose since 2009, which is, by the way, what the statute of limitations was designed for, to make sure that people don't sleep on their rights for six years. Looking at the record, there's no way you can say we slept on our rights. It was us enforcing our rights that caused this litigation to be filed in 2010. And to argue that, I read in the briefs that we could have, while the case was on, the trial court granted a motion to dismiss. So to say that after the case was dismissed, and there's a trustee sale pending, to say that we should have, I don't even know how we would have done it, to say that we would have, I guess, filed a foreclosure complaint at that time, I don't think that would have even been procedurally possible. But even assuming it was, once the case was on appeal for two years, I believe, since 2014, not only was there an injunction in place that prevented foreclosure during that time, and there's a minute entry even a couple months after. It was June 13, 2011. Excerpt from record 1082. The June 13, 2011 minute entry specifically states, no trustee sale shall actually occur until such time as the temporary restraining order of January 6, 2011, is dissolved or otherwise modified by the court. So the TRO stayed in place throughout the appeal, at least until January 30, 2014. That's 1,120 days of legal tolling. That's not even including the bankruptcy tolling, which is 15 days, and that's not even including the tolling, the equitable tolling, the forbearance agreement, the HAMP agreement. By the way, under HAMP guidelines, a lender is not allowed to move forward with a foreclosure when a HAMP application review is pending. Mr. Forty says the HAMP agreement is not in the record. Is that right? The HAMP application, it's in the record that the HAMP application was submitted on March 22, 2010. Off the top of my head, I don't know if the actual application was submitted. It was certainly in the underlying record in the sense of it was used to support our motion for summary judgment, I believe. If it wasn't included as an excerpt of record, I just don't know. But as Your Honor pointed out, there is the acknowledgment signed by Ms. Steinberger. So in other words, there's no dispute that let's let me put it this way. There's no dispute that the HAMP application was submitted on March 22, 2010. And there's no dispute that she made the HAMP payments, I believe three of them. And then there's no dispute that we postponed the trustee sale. Remember, it was originally scheduled for May. We continued to postpone it while she was being reviewed for this HAMP mod. Now, ultimately, she was denied for the HAMP. And it was shortly after that that the trustee sale was scheduled for November 2010, I believe. And that was this action was filed a few days before that scheduled trustee sale, as Ms. Steinberger said, to stop the trustee sale. So we have tolling. Again, I can't stress enough. If you're not allowed to foreclose because a court order or pending action prevents it, that's classic legal tolling. It's not fair to say that Ms. Steinberger can file a lawsuit. I think we understand your position.  Thank you, Your Honor. And then the last piece is that she did acknowledge the debt. There's no question about that. She acknowledged the debt. And it kind of gets to the issue of relief on appeal. Ms. Steinberger has admitted that she can't afford to pay back even a portion of this loan. So even assuming, let's say the foreclosure judgment was written down by half, let's say the foreclosure judgment was $500,000 instead of $800,000, it still wouldn't change the fact. We read the briefs and we do understand. Thank you, Your Honor. Unless there's any other questions, Your Honor, I have nothing else. Thank you. Thank you so much for your time. I did go back and look at what I think you're referring to. I believe it might be on 873. In any event, this was part of a trial period modification that was presented to Ms. Steinberger. And she did sign it, but it does not contain all the required elements of an acknowledgement of a debt and expression of a willingness to pay it under the case law in my briefing. It doesn't express a moral obligation to pay, and it doesn't acknowledge the justness of the claim. And as I said before in the case that I cited, even where the person listed the entire debt and the entire amount on a schedule of liabilities and signed it, the Arizona court said that does not reset the statute of limitations, that is not an appropriate acknowledgement of the debt and expression of willingness to pay. With respect to the matter being told on appeal, the facts don't bear that out, and here's why. Before the appeal occurred, the foreclosures filed a motion with the superior court and said, hey, we want to cancel the sale and re-notice it, because they believed they were going to lose on the void foreclosure documents. I opposed it. The court granted it. So they had an order hanging out there that said, you can cancel the sale and re-notice it essentially whenever you like. They sat on that order for a year until the case was on appeal before the Arizona Court of Appeals, at which point they pulled that order out because we had oral argument. The judges appeared to be leaning towards my client. So what they did was they pulled that old order out. They canceled the sale and filed a motion to dismiss the appeal. Quick, let's get rid of this thing before we lose. The Court of Appeals allowed them to do that. So to say that it was on appeal so we were frozen in time is absolutely false. In fact, they canceled the trustee's sale during the appeal. They could have just as easily said to the Arizona Court of Appeals, hey, look, we're worried about the statute of limitations, we need a tolling order, or we want to go ahead and do a judicial foreclosure now. What should we do? They didn't do anything. They did nothing. They sat back. Six years went by. There's no tolling here, Your Honors. This case should be over. The judgment should be reversed and entered in favor of Steinberger on the judgment for judicial foreclosure. And there are many other reasons. As I began, I don't have time to talk about them. Five different reasons why this judgment should be overturned, Your Honors. The truth is out there. Deutsche Bank wasn't owed any money. Deutsche Bank didn't suffer any loss. Deutsche Bank is not entitled to payment under the note. But Deutsche Bank, incredibly, is the one who got a judgment for judicial foreclosure. That's just clear error. That judgment needs to be overturned. Thank you so much for your time. Thank you, counsel. I appreciate the arguments of both parties. The case just argued is submitted for decision.
judges: Diaz, Schroeder, Gould